NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

MAY 16 2025

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

DAN C.,

Plaintiff - Appellee,

v.

DIRECTORS GUILD OF AMERICA -
PRODUCER HEALTH PLAN,

Defendant - Appellant.

No. 24-3203

D.C. No.
2:22-cv-03647-FLA-AJR

MEMORANDUM*

Appeal from the United States District Court
for the Central District of California
Fernando L. Aenlle-Rocha, District Judge, Presiding

Submitted May 14, 2025**
Pasadena, California

Before: OWENS, BENNETT, and H.A. THOMAS, Circuit Judges.

Defendant Directors Guild of America – Producer Health Plan ("Plan")

appeals from the district court's judgment for Plaintiff Dan C. in this action under

the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C.

---

\* This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

\*\* The panel unanimously concludes this case is suitable for decision
without oral argument. *See* Fed. R. App. P. 34(a)(2).

§§ 1001–1461. The Plan denied coverage for residential mental health treatment for Plaintiff's then-nine-year-old son, R.C., as not "medically necessary" under its terms. The district court entered judgment for Plaintiff on both of his claims: recovery of benefits under ERISA section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), and breach of fiduciary duty under ERISA section 502(a)(3), *id.* § 1132(a)(3).

We have jurisdiction under 28 U.S.C. § 1291. "We review de novo a district court's choice and application of the standard of review to decisions by fiduciaries in ERISA cases," and "[w]e review for clear error the underlying findings of fact." *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 962 (9th Cir. 2006) (en banc). We affirm the district court's judgment for Plaintiff on the recovery of benefits claim but reverse the judgment for Plaintiff on the breach of fiduciary duty claim.

1. The Plan argues that the district court erred by reviewing the denial of benefits de novo, instead of for abuse of discretion. We agree with the district court that the applicable standard of review is de novo. "[A] denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). The Plan expressly gives the Board of Trustees this authority. But the full Board of Trustees did not unambiguously "delegat[e] its discretionary authority" to the Board's Benefits Committee, which

made the final decision at issue here. *Madden v. ITT Long Term Disability Plan*, 914 F.2d 1279, 1284 (9th Cir. 1990).

Though the Plan delegates the task of "determining claims appeals" to the Committee and provides that the Committee "will have discretion to deny or grant the appeal in whole or part," this language falls short of the unambiguous delegation contemplated by our precedent. *See Ingram v. Martin Marietta Long Term Disability Income Plan*, 244 F.3d 1109, 1112–13 (9th Cir. 2001) (holding a provision that "[t]he carrier will make all decisions on claims" is simply "[a]n allocation of decision-making authority" that "is not, without more, a grant of discretionary authority" to determine eligibility for benefits or to construe the terms of the plan "in making those decisions"); *Sandy v. Reliance Standard Life Ins. Co.*, 222 F.3d 1202, 1206 (9th Cir. 2000) (holding even language "connot[ing] discretionary decision-making . . . does not unambiguously grant [the fiduciary] power to determine eligibility, power to construe the terms of the Plan, or power to make decisions that are final and binding"); *Newcomb v. Standard Ins. Co.*, 187 F.3d 1004, 1006 (9th Cir. 1999) ("Merely using the word 'determine' in the policy does not insure that the denial of benefits will be reviewed for abuse of discretion."). None of the Plan's provisions expressly "grant [the Committee] any power to construe the terms of the plan," rendering them "insufficient to confer [the] discretionary authority" required to "alter the standard of review from the default of de novo to

the more lenient abuse of discretion." *Abatie*, 458 F.3d at 963–64.

2.     The Plan next argues that the district court erred in analyzing medical necessity with reference to "clinical criteria," instead of the Plan's four-part definition of "medically necessary." But the language in the district court's order to which the Plan objects quotes from the very reasons provided by the Plan for its denial: that R.C. did not meet "clinical criteria" for ongoing residential treatment because he did not pose "a danger to [himself] or others" and because he did not "have a mental health condition that [was] causing serious problems with functioning." The district court did not err in focusing its analysis of medical necessity on the Plan's proffered denial rationale, which implicated the two contested elements of the Plan's four-part definition of "medically necessary." The Plan determined that because R.C. did not meet the cited clinical criteria, his continued residential treatment was (1) inconsistent with generally accepted medical practice and (2) not the most cost-efficient.

3.     It also was not clear error for the district court to find, on the administrative record before it, that R.C. did pose a danger to himself and others and did experience serious problems with functioning "that could not have been managed without residential treatment."[1]

---

[1] The district court supported its factual findings with many examples from the record of R.C.'s "threat of imminent serious harm to self and others," which persisted "long after his first three days" at the residential treatment facility:

24-3203

4.    Even were we to find that the abuse of discretion standard applies, we agree with the district court that the Plan abused its discretion by depriving Plaintiff of a full and fair review.[2]  ERISA mandates that plans, in denying a participant's claim, "provide adequate notice in writing . . . , setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant," and "afford a reasonable opportunity . . . for a full and fair review" of the denial.  29 U.S.C. § 1133; *see also Abatie*, 458 F.3d at 972 (noting violations of ERISA's procedural requirements are "matter[s] to be weighed" in determining whether a plan abused its discretion).  While the district court focused its analysis on the Plan's failure to engage with Plaintiff's evidence of medical necessity, this failure stemmed from a more fundamental failure to explain to Plaintiff that the Plan's operative

---

"stab[bing] his mouth" with his fork after becoming irritated at peers and staff; stating that he was "going to kill" a peer with whom he tried to instigate a fight; threatening to "kill everyone in the cottage" and "stab them all with a knife"; describing "in detail how he was going to kill his cottage peers and their families" including by "sneaking into their rooms at night" and "disemboweling them"; "wielding [a shower curtain rod] like a spear" pointed at staff while "sa[ying] he was going to kill them"; and hitting and punching staff on multiple occasions, including one that resulted in a 26-minute physical "holding."  The district court also cited numerous examples from the record of R.C.'s "lack of impulse control and basic functioning": requiring "help with his personal hygiene"; pulling a "nickel-sized chunk of hair out of his head"; urinating on the bathroom floor and in his dresser; and engaging in "[m]ild [s]exual [b]ehaviors" toward peers and staff.

[2] The remedy for an improper denial of benefits due to a procedurally deficient review of a claim is the same as the remedy for an improper denial of benefits due to a substantively incorrect medical necessity determination. *See Salomaa v. Honda Long Term Disability Plan*, 642 F.3d 666, 680–81 (9th Cir. 2011).

definition of medical necessity required attempting lower levels of care—namely, an intensive outpatient program ("IOP") or partial hospitalized program ("PHP")—before residential treatment.[3]

Since the initial denial of Plaintiff's claim, the Plan's medical reviewers noted internally that IOP or PHP services would be more appropriate for R.C. than residential treatment. Yet subsequent letters from the Plan to Plaintiff indicated that residential treatment was not medically necessary because R.C. did not pose a danger to himself or others and did not experience serious problems with daily functioning—and therefore could be treated with "outpatient services" instead. In this correspondence, the Plan did not refer to *intensive* outpatient services or IOP, let alone PHP. Plaintiff reasonably understood "outpatient services" to include the therapy that R.C. had tried since he was five years old. To appeal the denial, Plaintiff compiled thousands of pages of evidence documenting R.C.'s unsuccessful history with outpatient therapy, the danger he posed to himself and others, and his serious problems with daily functioning, unaware that the Plan was seeking evidence on "whether other less costly modalities had been attempted first." As Plaintiff pointed out at trial, it was not until a letter dated June 24, 2021—after R.C.'s departure from the residential treatment facility on May 31, 2021—that IOP or PHP was first

---

[3] "We may affirm on any basis supported by the record." *Fisher v. Kealoha*, 855 F.3d 1067, 1069 (9th Cir. 2017) (per curiam).

mentioned in writing to Plaintiff. This inadequate notice deprived Plaintiff of the opportunity to "answer[] in time" the Plan's questions about lower levels of care, to engage in "meaningful dialogue" on the issue of medical necessity, and to receive a "full and fair" review of the denial of his claim. *Salomaa*, 642 F.3d at 679–80.

5.      The district court erred in entering judgment for Plaintiff on the breach of fiduciary duty claim. Despite Plaintiff's requests for equitable relief under § 1132(a)(3)—including injunctive and declaratory relief related to the Plan's procedures for *all* claimants—the district court did not award any relief distinct from granting "Plaintiff's request to overturn Defendant's denial of benefits" and ordering Plaintiff's "recover[y] [of] the benefits due, plus prejudgment interest." Such relief is exactly what Plaintiff sought under § 1132(a)(1)(B). Because Plaintiff's "claim under § 1132(a)(1)(B) . . . afford[ed] adequate relief" for his injury, "relief is not available [to him] under § 1132(a)(3)." *Castillo v. Metro. Life Ins. Co.*, 970 F.3d 1224, 1229 (9th Cir. 2020). We remand only for the district court to amend the judgment to award relief solely under § 1132(a)(3).[4] Defendant shall bear all costs on appeal.

**REVERSED in part, AFFIRMED in part, and REMANDED.**

---

[4] This reversal in part does not impact Plaintiff's recovery. And we do not expect that the reversal in part will have any material impact on the separate proceeding for attorneys' fees and costs, currently the subject of appeal No. 24-5968.

             24-3203